SHIVERS, Judge.
This appeal is from a final order awarding appellee Pioneer Woodlawn Utilities, Inc., the value of a water utility system and the costs of operating the utility for a period of time. This was based on appellant William McEnally’s not retiring the lien of Bay County causing Bay County to foreclose and Pioneer to lose the benefit of the bargain for purchase of the utility. Pioneer was also awarded attorney’s fees. We affirm the award of attorney’s fees and the costs of operating the utility; but we reverse the award of the value of the utility-
The issue as framed by the appellant is whether there is competent substantial evidence to support the conclusion that McEnally had a contractual duty to retire the lien of Bay County. We conclude that McEnally had no contractual duty to retire the lien.
Woodlawn is a subdivision in Bay County with approximately 900 residents. In 1981 McEnally bought a private water system which services 206 Woodlawn households. The system consists of underground pipes and meters which were installed in the 1950s. He operated the system in the name of Woodlawn Utility Company, which he dissolved prior to 1986. For reasons not apparent in the record, McEnally rarely billed the residents of Woodlawn for the water he provided to them. Sometime in 1984 McEnally began falling behind in his payments to Bay County, which was McEnally’s water supplier. By October 1987 Bay County claimed McEnally owed it $40,560.71.
The county devised a plan whereby the Woodlawn residents would begin paying for their water at an increased rate until McEnally’s debt to the county was paid. The increased rate was termed a ‘pass through’ rate. Although rates for a privately owned water system cannot be increased without approval from the Public Service Commission, an attorney for the Commission provided assurances that the rate increase would be approved.
Jay Myers is a resident of Woodlawn who owns and operates Woodlawn’s sewer system in the name of Pioneer Woodlawn Utilities, Inc. On November 10, 1987, based on the assurances that approval of the pass through rate was forthcoming, Myers, as buyer, entered into a contract *624 with McEnally, as seller, to purchase the water system. The contract states in part
11. PAST DUE WATER BILL TO BAY COUNTY. The parties recognize that there is a past due bill for water from Bay County in the amount of $40,560.71. The Buyer shall enter into a Water Purchase Contract with Bay County, and if the Buyer pays to Bay County $10,000.00 prior to January 20, 1988, and purchases 40,669,000 gallons of water at the rate of $1.39 per 1,000 gallons, Bay County will cancel the obligation. Buyer agrees to comply with the terms of the Water Contract with Bay County. Further, Buyer consents to the placement of mortgage lien by Seller on the Utility in the principal amount of $40,560.71 accruing interest at the rate of twelve percent (12%) ■ per annum payable to Bay County, and Buyer agrees to accept title subject to said lien.
(emphasis added). Also on November 10, 1987, McEnally executed a note and mortgage to the county placing a lien on the water system in the principal amount of $40,560.71; and McEnally quitclaimed his interest in the water system to Myers.
Another agreement was executed on November 17, 1987, between McEnally, Myers and the county. It states in part
2. The County agrees to cancel the past due water charges when Pioneer Wood-lawn Utilities, Inc., has paid, pursuant to its Water Service Contract with Bay County dated November 17, 1987, $10,000 on or before January 20, 1988, and has purchased a minimum of 81,000,000 gallons of water at a rate of $.98 per 1,000 gallons.
3. If Pioneer Woodlawn Utilities does not perform as specified in the above paragraph, McEnally agrees to pay $40,560.71 plus accrued interest at the rate of twelve percent (12%) per annum less the sum of (i) any portion of the $10,000 payment made by Pioneer Woodlawn Utilities, Inc., and (ii) $.43 per 1,000 gallons of water purchased at the rate of $.98 per 1,000 gallons.
On November 24, 1987, Myers entered into a water service contract with Bay County. It states in part

4.WATER RATES AND CHARGES....

A. For the period October 20, 1987, through January 20, 1988, $.55 per 1,000 gallons of water delivered to the Utility, plus and additional payment of $10,000 on or before January 19, 1988.
B. Commencing January 20, 1988, $.98 per 1,000 gallons of water delivered to the Utility.
It later became known that the Commission would not approve the pass through rate increase; and a group of Woodlawn residents protested the transfer of the water system’s operating certificate. It therefore became obvious that the sale of the water system would be delayed, if not thwarted. On February 4, 1988, McEnally and Myers entered into an “Operations Agreement” whereby Myers would operate the water system. The agreement, which was prepared by Myers’ lawyer, expressly supplemented and modified the purchase contract; and it states in part
3. The parties recognize, covenant and agree that the Purchase Contract is contingent upon Florida Public Service Commission approval of the transfer contemplated therein.
4. The parties recognize, covenant and agree that the past due water bill (“past due water bill to Bay County”, as contemplated in paragraph 11 of the Contract For Sale and Purchase, which contemplates that Buyer shall purchase 40 Million, Six Hundred and Sixty-nine Thousand (40,669,000) gallons of water at the rate of One Dollar and 39/100 ($1.39) per thousand gallons) is expressly conditioned upon, and subject to, approval by the Florida Public Service Commission of a petition to be filed by either Seller, or Buyer on Seller’s behalf, which requests that said rate of One Dollar and 39/100 ($1.39) per thousand gallons be “passed-through”, pursuant to Section 367.081(4)(b), Fla.Stat. The parties recognize that, in the absence of approval of such a “pass-through” by the Florida *625 Public Service Commission, it would be economically and financially unfeasible for Buyer to purchase said amount of water at said rate and therefore, in the absence of such Florida Public Service Commission approval, Buyer is released from any and all requirements of numbered paragraph (11) of the Purchase Contract.
5. The parties recognize, covenant and agree that during that period of time which falls between the date for the execution of the Purchase Contract, and final approval of the transfer (as contemplated herein) by the Florida Public Service Commission, Buyer shall operate the Utility as an agent of the Seller. To that end, during that same period of time, all risk of loss shall remain with the Seller, and Seller shall indemnify and hold Buyer harmless from and against any and all liabilities, claims, damages, costs or expenses (including reasonable attorney’s fees) to which Buyer may become subject by reason of or arising out of the performance of its duties or its operation of the utility system as contemplated herein.
[[Image here]]
7. The parties recognize, covenant and agree that the Purchase Contract failed to either contemplate or otherwise foresee the potential expense (and attendant effect on the economic viability of the purchase and sale) of a protest by the residents of Woodlawn and/or the Office of Public Counsel to this transfer. The parties, in recognition of this fact, hereby covenant and agree that any funds expended by Buyer as reasonably necessary to secure the transfer of the Public Service Commission certificate, as contemplated hereinabove, shall be deemed to be a credit against the purchase price (as contemplated by paragraph 2 of the Purchase Contract) of Ten Thousand Dollars and 00/100 ($10,000). Alternatively, if Buyer and Seller are in agreement that a pending protest of the residents of Woodlawn and/or the Office of Public Counsel renders this entire transaction economically and financially unfeasible, the parties shall execute the proper documents to render the entire transaction null and void.
(emphasis added).
In April 1988 the Commission officially disapproved the pass through rate increase. On May 11, 1988, the county sued McEnally and Myers. The complaint contained two counts. Count one brought suit against McEnally to foreclose on the November 10 mortgage. The complaint alleged McEnally
defaulted under the Agreement and Mortgage by failing to make the payments due therein upon notice and demand by Plaintiffs, said payments being due because Pioneer has failed to make the $10,000 payment on or before May 1, 1988, and because Pioneer has stated that it will not pay the water rate of $.98 per 1,000 gallons.
The second count brought suit against Myers for defaulting on the water service contract as stated in count one.
McEnally and Myers cross claimed each other. The trial court granted summary judgment of foreclosure and retained jurisdiction “for the purpose of making any and all further Orders and Judgments herein as may be equitable....” McEnally appealed the foreclosure, but the appeal was voluntarily dismissed. Bay County bought the water system at the foreclosure for $22,000.
The bases for Myers’ cross claim were (1) pursuant to the contract to purchase the water system, the quitclaim deed, and the operations agreement, McEnally was obligated to pay the money owed to Bay County, and by not doing so, McEnally breached the agreement; and (2) pursuant to the contract, quitclaim deed, and the operations agreement, McEnally is required to indemnify Myers from all damages awarded to Bay County in the foreclosure action.
The bases for McEnally’s cross claim were (1) the series of contracts and agreements constitute one indivisible agreement, which is void as against public policy because the Commission refused to approve the rate structures contemplated in the agreement; and (2) McEnally was deceived *626 as to the meaning of the contract and there was neither consideration nor a meeting of the minds. For these reasons, McEnally sought recision and return to the status quo ante.
A bench trial was conducted on May 15, 1990. Pursuant to a pretrial order, the issues were “a. Whether there was a contract or contracts between the parties; b. Whether the contract or contracts were breached by the Defendants, and, if so, what, if any, damages were sustained by the Plaintiff.” The parties stipulated the value of the water system was $25,000.
Only Myers and McEnally testified. Myers testified he never contemplated buying the utility subject to the lien. McEnally testified he never intended to sell the system for only $10,000 and still be obligated to retire the lien of Bay County. They both testified everyone presumed the pass through rate increase would be approved.
The trial court found the “actions of McEnally in allowing the utility to go to foreclosure have denied Pioneer Woodlawn Utilities, Co., Inc. the benefit of the purchase of the utility.” The trial court ordered McEnally to pay Pioneer $37,991.99 plus interest. The amount includes the value of the water system ($25,000) and Myers’ losses incurred during the thirteen months he operated the system.
On appeal McEnally argues that there is no evidence he was obligated to retire Bay County’s lien.
Myers answers that paragraph four of the operations agreement—when read in conjunction with paragraph eleven of the original purchase agreement—creates a contractual duty for McEnally to retire the lien. Myers argues that when the operations agreement released him from his obligation to buy the utility subject to the lien, McEnally became obligated to deliver the utility free of the lien.
We agree with McEnally. There is no clause in any agreement which obligated McEnally to deliver title to the water system free of the Bay County’s lien. Contrary to Myers’ argument, paragraph four of the operations agreement creates no affirmative duties. Myers is simply released from his obligation to accept title subject to Bay County’s lien if the pass through rate increase is not approved.
Accordingly, we reverse the award of $25,000 for the value of the utility; and we otherwise affirm the order, including the award of attorney’s fees.
AFFIRMED in part and REVERSED in part.
WOLF, J., and CAWTHON, Senior Judge, concur.